T.C. Memo. 2007-140

UNITED STATES TAX COURT

CALPO HOM & DONG ARCHITECTS, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4227-05.                    Filed June 4, 2007.

<u>Richard Todd Luoma</u>, for petitioner.

<u>Christian A. Speck</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Respondent determined a deficiency of $7,506
in petitioner's 2002 Federal corporate income tax.  The issue for
decision is whether, during 2002, petitioner was a qualified
personal service corporation as defined by section 448(d)(2).[1]

---

[1]  Unless otherwise indicated, all section references are to
(continued...)

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. At the time it filed its petition, petitioner's principal place of business was in Sacramento, California.

Petitioner, a corporation, offers architectural services and other related services to its clients. In its promotional materials, petitioner describes its services:

> Calpo Hom & Dong Architects (CH&D) offers a full range of architectural services, including master planning, feasability studies, design, interior design, space planning, facilities management, construction administration, historic preservation and consulting services.
>
> *     *     *     *     *     *     *
>
> Our widely diversified practice, encompassing large scale planning projects to singular architectural projects, affords us the latitude of a wide range of knowledge from which we can draw our thoughts.
>
> Our approach seeks a balanced weighing of elements that make up architecture:  design, the organization of space and light, structure, systems, and materials.

To carry out these services, petitioner employs licensed architects, unlicensed architects, and nonarchitects.

---

[1](...continued)
the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

During 2002, petitioner was owned 100 percent by architects licensed to practice in the State of California. Petitioner timely filed a Form 1120, U.S. Corporation Income Tax Return, for 2002, identifying its business activity as architecture. Petitioner reported gross receipts of $2,728,291, cost of goods sold of $850,006, total income of $1,857,382, total deductions of $1,819,853, taxable income of $37,529, and total tax of $5,629. To calculate the total tax, petitioner used the graduated tax rates generally applicable to corporations, as provided in section 11(b)(1).

On November 18, 2004, respondent issued petitioner a notice of deficiency stating:

> It is determined that for the taxable year shown below [2002], CALPO HOM & DONG ARCHITECTS INC is a Personal Service Corporation that is subject to a special flat income tax rate of 35%.

> The corporation is a qualified Personal Service Corporation because substantially all of the corporation's activities involve the performance of services in the fields of health, law, engineering, architecture, accounting, actuarial science, the performing arts, or consulting, and substantially all of the stock of the corporation is held by employees performing services for the corporation, retired employees, employees' or retired employees' estates or persons acquiring stock by reason of an employees' death.

Using the flat 35-percent tax rate applicable to qualified personal service corporations under section 11(b)(2), respondent

determined a corrected tax liability of $13,135 and a deficiency of $7,506 in petitioner's 2002 Federal corporate income tax.

In response to the notice of deficiency, petitioner timely filed a petition with this Court.

OPINION

I.  Applicable Code Sections and Regulations

Section 11(a) imposes a tax on the taxable income of every corporation.  Section 11(b)(1) provides graduated tax rates generally applicable to corporations.  However, section 11(b)(2) provides:  "Notwithstanding paragraph (1), the amount of the tax imposed by subsection (a) on the taxable income of a qualified personal service corporation (as defined in section 448(d)(2)) shall be equal to 35 percent of the taxable income."

A corporation is a qualified personal service corporation if it meets both the "function test" and the "ownership test" of section 448(d)(2).  See sec. 1.448-1T(e)(3), Temporary Income Tax Regs., 52 Fed. Reg. 22768 (June 16, 1987).  Under the function test, "substantially all of the activities [of the corporation must] * * * involve the performance of services in the fields of health, law, engineering, architecture, accounting, actuarial science, performing arts, or consulting".  Sec. 448(d)(2)(A) (emphasis added).  Section 1.448-1T(e)(4)(i), Temporary Income Tax Regs., supra, further describes the function test:

> A corporation meets the function test if substantially all the corporation's activities for a taxable year

involve the performance of services in one or more of
the following fields--

(A) Health,
(B) Law,
(C) Engineering (including surveying and mapping),
(D) Architecture,
(E) Accounting,
(F) Actuarial science,
(G) Performing arts, or
(H) Consulting.

Substantially all of the activities of a corporation
are involved in the performance of services in any
field described in the preceding sentence (a qualifying
field), only if 95 percent or more of the time spent by
employees of the corporation * * * is devoted to the
performance of services in a qualifying field. * * *
[Emphasis added.]

As relevant to this case, a corporation meets the ownership test

if substantially all of the corporation's stock (by value) is

held directly (or indirectly) by employees performing services

for the corporation in connection with activities involving a

qualifying field.  Sec. 448(d)(2)(B); see also sec. 1.448-

1T(e)(5), Temporary Income Tax Regs., 52 Fed. Reg. 22770 (June

16, 1987).

II.  The Parties' Positions

Petitioner asserts that, during 2002, approximately 70

percent of its activities involved the performance of services in

the qualifying field of architecture.  Petitioner asserts that

the remaining 30 percent of its activities involved the

performance of nonarchitectural services.  Petitioner concludes

that, because less than substantially all (less than 95 percent)

of its activities were devoted to the performance of architectural services, it was not a qualified personal service corporation.

Respondent argues that, during 2002, petitioner was a qualified personal service corporation. Respondent asserts that petitioner met the ownership test because petitioner was owned 100 percent by employees who performed architectural services. Respondent also asserts that petitioner met the function test, and advances two alternative arguments: (1) Petitioner's classification of architectural and nonarchitectural services is incorrect, many of the "nonarchitectural" services are actually architectural services, and more than 95 percent of petitioner's activities involved the performance of services in the qualifying field of architecture; or (2) even if petitioner's classification is correct, the nonarchitectural services are in the qualifying field of consulting, and more than 95 percent of petitioner's activities involved the performance of services in the qualifying fields of architecture and consulting.

Petitioner concedes that it meets the ownership test because it was owned 100 percent by architects.[2] Petitioner does not

---

[2] Apparently, petitioner concedes that it meets the ownership test only if the Court concludes that only one qualifying field can be considered in applying the function test. It is unclear why petitioner limits its concession in this manner. Nevertheless, because we consider only one of the qualifying fields in determining petitioner failed to meet its
(continued...)

dispute that its "nonarchitectural" services could be classified as consulting services for purposes of section 448(d)(2)(A). However, petitioner argues that, when drafting section 448(d)(2), Congress intended to limit the definition of a qualified personal service corporation to a corporation where substantially all activities were performed in only one of the qualifying fields. Petitioner does not cite any legislative history to support its argument. Instead, petitioner interprets the use of "or", which separates the final two qualifying fields in section 448(d)(2)(A), to mean that only one qualifying field can be considered. Petitioner argues that, to the extent the temporary regulations allow the qualifying fields to be combined ("A corporation meets the function test if substantially all the corporation's activities * * * involve the performance of services in one or more of the following fields" (emphasis added)), the regulations are invalid.

We need not address whether petitioner's classification of architectural and nonarchitectural services is correct,[3] nor do

---

[2](...continued)
burden of proof, see _infra_, the condition on petitioner's concession has been met.

[3] Petitioner's classification of services is questionable for many reasons, not the least of which is that some of the services petitioner now classifies as nonarchitectural services were identified as architectural services in its promotional materials. Any reference below to architectural services and nonarchitectural services does not constitute a finding by this
(continued...)

we need to discuss the validity of section 1.448-1T(e)(4),
Temporary Income Tax Regs., supra.  Assuming arguendo that
petitioner's classification of services is correct, and that for
a corporation to be a qualified personal service corporation,
substantially all of its activities must involve the performance
of services in only one of the qualifying fields, conclusions we
explicitly decline to draw, petitioner would still bear the
burden of proving that less than substantially all of its
activities involved the performance of architectural services.[4]
See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).
As described below, petitioner failed to meet its burden.

III. Analysis

To establish that less than substantially all of its
activities involved the performance of architectural services,
petitioner relies exclusively on monthly revenue summaries and a
2002 annual revenue summary (the revenue summaries).  The revenue
summaries purport to break down revenue petitioner received by
specific types of services, with each service classified as

---

[3](...continued)
Court.  Instead, such references are used for the purpose of
clarity in demonstrating that, even if petitioner's
classification were accepted, petitioner would still fail to meet
its burden of proof.

[4] Under sec. 7491(a), the burden of proof may shift to the
Commissioner in certain situations.  Petitioner does not argue
that the burden of proof shifts to respondent.

architectural or nonarchitectural.[5]  Petitioner concludes on the basis of the revenue summaries that of its 2002 revenue totaling $2,442,122,[6] $1,710,502 was received for architectural services and $731,620 was received for nonarchitectural services.

The fatal flaw in petitioner's approach is that the revenue summaries measure the wrong data.  Under the function test of section 448(d)(2), "substantially all of the activities * * * [must] involve the performance of services in the fields of * * * architecture". (Emphasis added.)  Section 1.448-1T(e)(4)(i), Temporary Income Tax Regs., supra, states:  "Substantially all of the activities of a corporation are involved in the performance of services in any field * * * only if 95 percent or more of the time spent by employees of the corporation * * * is devoted to the performance of services in a qualifying field." (Emphasis added.)  In other words, the appropriate inquiry is whether petitioner's employees devoted substantially all of their time to the performance of architectural services.  The revenue summaries

---

[5]  Petitioner's architectural services included schematic design, design development, construction documents and bid negotiations, construction document support, and specialized architectural services; petitioner's nonarchitectural services included space planning, space planning support, price planning, interior design, construction administration, specialized services, and outside consulting.

[6]  We note that petitioner's revenue summaries indicate total 2002 revenue of $2,442,122, while its 2002 tax return indicates gross receipts of $2,728,291.  Petitioner does not explain this discrepancy.

measure only the revenue received in 2002; they do not measure the amount of time petitioner's employees devoted to the performance of architectural services.

Petitioner apparently recognized this problem and attempted to establish a link between the revenue received and the time spent on the performance of architectural services. One of petitioner's architect-owners, Alan Hom (Mr. Hom), testified that the average hourly billing rate for architectural services was $100 and the average hourly billing rate for nonarchitectural services was between $85 and $90. Petitioner used the revenue summaries and Mr. Hom's testimony to extrapolate the approximate number of hours worked by petitioner's employees in the performance of architectural and nonarchitectural services. Petitioner requested that the Court find as fact:

> For 2002, the number of hours spent on architectural services based on revenue for such services and the average hourly rate of $100 was 17,105. * * * For 2002, the number of hours spent on non-architectural services based on revenue for such services and the average hourly rate of $85 to $90 was 8,607 (at $85 per hour) or 8,129 (at $90 per hour). * * *

> For 2002, based on hours spent on architectural services versus all time spent on all services, petitioner's architectural services represented 66.52% (when the average rate for non-architectural services is calculated at $85 per hour) and 67.78% (when the average rate for non-architectural services is calculated at $90 per hour).

There are several problems with petitioner's approach. First, other than Mr. Hom's testimony, petitioner presented no

evidence to establish average hourly rates. Mr. Hom did not refer to any specific documents to support his testimony, and he appeared to be offering only rough estimates. We give little weight to Mr. Hom's unsupported testimony.

Even if Mr. Hom's estimates were reliable, the estimates appear to be applicable only to projects where petitioner billed its clients at an hourly rate. Petitioner's contracts demonstrate a variety of billing methods, including fixed fees, hourly fee agreements, and hourly fee agreements with maximum total fees based on the usable square footage of the project. Mr. Hom testified that only 40 to 50 percent of the contracts billed for services at an hourly rate. We do not believe that petitioner's approach provides an accurate measure of the time petitioner's employees devoted to the performance of architectural services, particularly considering petitioner billed no more than half of its clients at an hourly rate.

Even if Mr. Hom's estimates could be used to determine time spent, regardless of the billing method, the revenue summaries still would not provide an accurate measure of the time spent by petitioner's employees during 2002. For example, petitioner's January 2002 revenue summary lists revenue from 28 projects.[7] Of

---

[7] The following project numbers appear on petitioner's January 2002 revenue summary: 00137.00; 00184.00; 00203.00; 00209.00; 00223.00; 00268.00; 01014.00; 01049.00; 01070.00; 01089.03; 01089.04; 01097.00; 01133.00; 01134.00; 01147.00;

(continued...)

the 28 projects, 18 projects do not appear on any of petitioner's employees' time sheets for January 2002.[8]

The mismatching of revenue and time spent is even clearer when comparing individual employees' time sheets with the monthly revenue summaries. According to Frank Bravo's (Mr. Bravo's) time sheets, Mr. Bravo worked on 10 projects during January 2002. Between February and October 2002, petitioner received revenue from seven of Mr. Bravo's January projects, but it received no revenue during 2002 from three of the projects. According to Karl Chan's (Mr. Chan's) time sheets, Mr. Chan worked on 19 projects during January 2002. Between March and October 2002, petitioner received revenue from 14 of Mr. Chan's January projects, but it received no revenue during 2002 from 5 of the projects. According to Mr. Hom's time sheets, Mr. Hom worked on 16 projects during January 2002. Between March and August 2002, petitioner received revenue from seven of Mr. Hom's January projects, but it received no revenue during 2002 from nine of the projects. This pattern is not limited to these employees, nor is

---

[7](...continued)
01154.00; 01157.00; 01167.00; 01193.00; 01204.00; 01218.00; 01218.01; 01221.00; 01247.00; 01253.00; 01259.00; 01264.00; 01272.00.

[8] Of the project numbers appearing on petitioner's January 2002 revenue summary, only the following 10 project numbers appear on petitioner's employees' time sheets for January 2002: 00184.00; 00203.00; 00223.00; 00268.00; 01014.00; 01133.00; 01221.00; 01247.00; 01253.00; 01264.00.

it limited to services performed in January 2002. These are only three examples that reflect a pattern of mismatching of revenue and time spent by nearly all of petitioner's employees during all months of 2002. The conclusion is inescapable--petitioner's 2002 revenues do not measure the time spent by petitioner's employees during 2002. Some of petitioner's 2002 revenue was received for work done outside of 2002, and petitioner received no revenue during 2002 for some of the work done by its employees during 2002.

Finally, petitioner's 2002 revenue from nonarchitectural services included revenue from "outside consulting". Mr. Hom testified that outside consulting included "mechanical, electrical engineers, plumbing engineers, that basically since we don't have those engineers in-house, we consult out for them." In other words, petitioner received revenue during 2002 for work done by people other than petitioner's employees. By including revenue from outside consulting, petitioner measured time spent by nonemployees, making petitioner's estimation of time spent by its employees even more inaccurate.

For the above reasons, we find that petitioner failed to prove that less than substantially all of its activities were devoted to the performance of services in the qualifying field of architecture. We sustain respondent's determination that, during 2002, petitioner was a qualified personal service corporation

under section 448(d)(2), thus subject to a flat 35-percent tax rate under section 11(b)(2).

In reaching our holdings, we have considered all arguments and contentions made, and, to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.